## APPEAL OF MADERA YOSEMITE BIG TREE AUTO CO.

Docket No. 1974.    Submitted June 1, 1925.    Decided July 14, 1925.

A mere agreement by the sole minority stockholder owning 35 per cent of the stock in a corporation to sell on request his interest to the majority stockholder, owning 65 per cent of the stock, *held* insufficient proof of affiliation within the meaning of Revenue Act of 1918, section 240.

*Andrew T. Smith* and *Virgil Y. Moore, Esqs.,* for the taxpayer.
*Percy S. Crewe, Esq.,* for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the fiscal year ended November 30, 1919, amounting to $2,770.82.

The single issue is whether the taxpayer was affiliated with another corporation during the year in question. From the pleadings and depositions introduced at the hearing the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a California corporation with principal office in Wawona. On organization in 1913, its entire capital stock, 15,000 shares, of one dollar par value each, were transferred to one Edwin T. Huffman, for five automobiles, tools, and accessories. Huffman then sold 65 per cent of the stock for $9,750 in cash to the Yosemite Stage and Turnpike Co., and retained the balance of $5,250, par value, or 35 per cent of the total capital stock.

The Yosemite Stage and Turnpike Co. had constructed roads into Yosemite National Park at its own expense and operated stage coaches for tourists. Later, it transferred the roads to the United States and received in return a fifteen-year exclusive concession to use the roads and the right to collect tolls for such use by others. For a time prior to 1911 it unsuccessfully endeavored to operate automobiles over the roads in place of stage coaches. It then made an arrangement with Huffman to operate his automobiles, paying him $400 a month during the first year. That experiment proved successful, and in 1913 an arrangement with Huffman was effected which resulted in the organization of the taxpayer. The Turnpike Company, as stated, acquired 65 per cent of the stock in the taxpayer. Huffman received a salary of $800 a year from the taxpayer and any dividends payable upon his 5,250 shares, and agreed orally to sell his stock to the Turnpike Company at any time on request, upon being paid therefor on the basis of 35 per cent of the value of such equipment as might be owned by the taxpayer at the time of such transfer.

The situation remained unchanged until the Turnpike Company requested the transfer in 1923 and the same was carried through. Huffman thereafter continued as president and manager of the taxpayer at a salary of $4,000 a year.

None of the stock in the Turnpike Company was owned by Huffman. Three of the five directors in the taxpayer were also among the five directors in the Turnpike Company, the other two being different persons in each company.

The Commissioner determined a deficiency for the year 1919 in the amount of $2,770.82, and from that determination the taxpayer duly appealed to this Board.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

IVINS: The mere agreement by a single minority interest to sell its stock to the single majority interest on request at a price to be determined upon the exercise of the option, unsupported by any evidence that control was in fact exercised by the majority as to the voting of the minority stock or as to how any of the stock was voted, does not constitute sufficient proof of the affiliation of two corporations within the meaning of section 240 of the Revenue Act of 1918.

As stated by us in *Appeal of Isse Koch & Co.*, 1 B. T. A. 624, 627:

> The control, however, must be shown to be a genuine and real control actually exercised, and it can not be established by mere assertions or agreements between majority and minority stockholders unsupported by facts. Potential control of stock is not sufficient in itself to justify consolidation.

The direct ownership by the Yosemite Stage and Turnpike Co. of 65 per cent of the taxpayer's stock was not, to our minds, an ownership or control of *substantially all* of such stock.